JOSEPH M. ALIOTO, SBN 42680
Theresa D. Moore, SBN 99978
Jamie L. Miller, SBN 271452
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco CA 94104
Telephone:  (415) 434-8900

[Additional Counsel Listed on Signature Page]
Attorneys for Plaintiff Edward Lawrence

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD LAWRENCE, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE SHERMAN ACT (15 U.S.C. §2)** |
| vs. | |
| APPLE INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Edward Lawrence, on behalf of himself and all others similarly situated in the United States, brings this action for treble damages and injunctive relief under the federal antitrust laws of the United States against Defendant Apple Inc. ("Apple"), demanding trial by jury, and complaining and alleging as follows:

## NATURE OF THE CASE

1.     This lawsuit is brought as a class action on behalf of individuals and entities that purchased software known as "applications" through their Apple iPhone from the "App Store" owned and operated by Defendant Apple during the period

beginning as early as June 2007 and continuing through the present (the "Class Period"). Plaintiff alleges that during the Class Period the Defendant engaged in a litany of anticompetitive conduct and practices designed specifically to unlawfully monopolize, fix, raise, maintain or stabilize prices for applications sold through its "iTunes" store or its "App Store" in the United States.

2.      Plaintiff alleges that Defendant's anticompetitive conduct is in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, which prohibits monopolization of trade and commerce within the United States. Plaintiff seeks treble damages and injunctive relief on behalf of himself and all other similarly situated purchasers of Apple applications during the Class Period.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §15, 26, under Section 2 of the Sherman Act, 15 U.S.C §2, and under 28 U.S.C. §§1331 and 1337.

4.      This Court has personal jurisdiction over Defendant because Defendant has systematically and continually conducted business in the United States, including marketing, advertising and sales directed to residents here.

5.      Venue is proper in this Judicial District pursuant to Section 12 of the Clayton Act, 15 U.S.C. §22 and pursuant to 28 U.S.C. § 1391(b), (c) and (d) because, during the Class Period, the Defendant resided, transacted business, was found, or had agents in, this district, and because a substantial part of the events giving rise to

Plaintiff's claims occurred in this district, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

## **PLAINTIFF**

6.      Plaintiff EDWARD LAWRENCE ("LAWRENCE") purchased applications for use on his iPhone from the Defendant during the Class Period. Lawrence is a California resident. Lawrence purchased these applications directly from the Defendant through iTunes or the App Store. As a direct and proximate result of Defendant's anticompetitive conduct alleged herein, Lawrence paid supra-competitive prices for the applications during the Class Period and as such, has suffered injuries directly related to the anticompetitive conduct of the Defendant. Lawrence will also continue to suffer harm if the Defendant is not enjoined from continuing its unlawful conduct. Lawrence's claims are typical of the claims of the members of the proposed class.

## **DEFENDANT**

7.      Defendant APPLE INC. ("APPLE") is a California corporation with its principal place of business located at 1 Infinite Loop, Cupertino, California 95014. Apple regularly conducts and transacts business in this District and throughout the United States. Apple manufactures, markets and sells the iPhone, and owns and operates iTunes and the App Store.

/ / /

/ / /

/ / /

1
2
3

## INTERSTATE TRADE AND COMMERCE

4
5       8.      Throughout the Class Period, there was a continuous and uninterrupted

6  sale of applications in interstate and international commerce throughout the United

7  States.

8
9       9.      Defendant's unlawful activities, as described herein, took place within the

10  flow of interstate commerce to domestic app purchasers located in states other than the

11  states in which Defendant is located, as well as throughout the world, and had a direct,

12  substantial and reasonably foreseeable effect upon interstate and international commerce,

13  including the United States market.

14
15  ## CLASS ACTION ALLEGATIONS

16      10.     Plaintiff brings this action on behalf of itself and as a class action under the

17  provisions of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of

18  all members of the following class:

19
20              All persons or entities that purchased applications from Defendant
21              through iTunes or the App Store, at any time between June 2007
22              and the present. Excluded from the Class are Defendant and its
23              employees, affiliates, parents, subsidiaries, and the United States
24              government.

25      11.     This action has been brought and may properly be maintained as a class

26  action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following

27  reasons:

28

a.     The Class is ascertainable and there is a well-defined community of interest among members of the Class;

b.     Based upon the nature of trade and commerce involved and the number of purchasers of applications from Defendant, Plaintiff believes that the members of the Class number in the thousands and therefore are sufficiently numerous that joinder of all Class members is not practicable;

c.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff purchased applications from the Defendant, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

d.     The following common questions of law or fact, among others, exist as to the members of the Class:

i.     Whether Defendant violated Section 2 of the Sherman Act to fix, raise, maintain, and/or stabilize the prices of applications sold in the United States through its App Store and through iTunes during the Class Period;

ii.    Whether the prices for applications charged by Defendant are higher than they would have been in the absence of Defendant's anticompetitive conduct;

iii.   The operative time period of Defendant's anticompetitive conduct;

iv.    Whether Defendant's conduct caused injury to the business or property of Plaintiff and the members of the Class;

v.     The appropriate measure of the amount of damages suffered by the Class;

vi.     Whether Defendant took steps to actively conceal its anticompetitive conduct; and

viii.   The appropriate nature of class-wide equitable relief.

e.      These and other questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages;

f.      After determination of the predominant common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable subclasses;

g.      Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff has no interests that are antagonistic to other members of the Class and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent it and the Class;

h.      A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged Class members is impractical. The damages suffered by the individual Class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Thus, absent the availability of class action procedures it would not be feasible for Class members to redress the wrongs done to them. Even if the Class members could afford individual litigation, the court system could not. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and the court system. Therefore, the class action device presents far fewer case management difficulties and

will provide the benefits of unitary adjudication, economy of scale and comprehensive

supervision in a single court;

      i.     Defendant has acted, and/or refused to act, on grounds generally applicable

to the Class, thereby making appropriate final injunctive relief with respect to the Class

as a whole; and

      j.     In the absence of a class action, Defendant would be unjustly enriched

because it would be able to retain the benefits and fruits of its wrongful conduct.

### DEFENDANT'S ANTICOMPETITIVE AND MONOPOLISTIC CONDUCT

      12.     Apple began selling iPhones in 2007 and created its exclusively-owned

App Store in 2008 to market the applications for its phones.  Apple's iPhone operating

system was intentionally designed to lock iPhone owners into buying applications only

from Apple. Applications created for other phones not sold by Apple through its App

Store will not work on the Apple iPhone and Apple's App Store is the only authorized

place where iPhone owners may purchase applications that function on their phones.

      13.     Apple sells these applications directly to iPhone owners.  The applications

that are available for purchase in Apple's app store are created by developers who pay a

membership fee to Apple for the right to market the developers' applications to

consumers through the store.  Apple charges these developers a 30% fee on every sale.

In effect, Apple's iPhone owners are locked into paying Apple's 30% fee because there

is no competition from other applications not sold through Apple's App Store.

      14.     Apple's 30 percent fee is mostly profit.   It is an artificially inflated fee that

would be substantially less in an otherwise competitive market. In a competitive

environment, Apple would be pressured into lowering its fee because iPhone owners would have alternatives available from which to choose more competitive pricing on similar applications.  Under present circumstances, however, if an iPhone owner wants to purchase an app, he has only two options: (1) buy the app from Apple's App Store at a higher-than-competitive price or (2) do not buy the app at all. At no time did Apple first obtain the consumers' contractual consent to Apple's monopolization of the iPhone applications market or to the charging of monopoly prices for the iPhone applications, nor did Apple ever obtain permission from iPhone owners to lock their iPhones so that their iPhones would only accept and run applications purchased from Apple.

15.    As a result, Plaintiff and the class have paid more for the applications purchased from Apple's App Store than they would have paid in a competitive market absent Apple's anticompetitive conduct.  In effect, Apple exercises monopoly power in the retail market for the sale of applications and has unlawfully used its monopoly power to force iPhone owners to pay Apple higher-than-competitive prices for applications.

16.    This case seeks to remedy Apple's "at all costs" strategy to suppress competition and to maintain its hegemony in the iPhone applications market.

17.    Until now, Apple has succeeded in establishing and maintaining a monopoly in the iPhone applications market by improperly foreclosing customers from accessing rival products, and by locking those customers into purchases through Apple's App Store by designing Apple's operating system to work only with Apple authorized App Store applications.  Even though a customer may prefer to choose more innovative products from other firms, Apple has leveraged control over its operating system in such

a way that only it can provide the applications that will function on its iPhones.  By doing so it has denied its customers access to and the ability to choose from potentially cheaper, more efficient and technologically superior new products. Apple's illegal conduct has harmed, and unless stopped will continue to harm, competition in the market for cell phone applications.

## THE RELEVANT MARKET

18.     Absent this Court's intervention, Apple will continue to maintain supra-competitive prices for less-innovative technology in the iPhone applications market because consumers are not presently able to consider offerings from non-Apple App Store vendors that may provide more reliable or more efficient applications.  Apple would likely be forced to lower its prices - to the ultimate benefit of consumers - if more innovative competition was not foreclosed. Instead, Apple has eliminated its competition in order to maintain and impose its unreasonable 30% profit.

19.     Customers cannot compare products on the basis of their technological innovations or efficiency. While the maintenance of high pricing and the suppression of innovative products are classic antitrust harms, Apple is also robbing its own customers of a choice on the merits.

20.     Apple has no valid business justification for its conduct since its sole purpose is the suppression of competition, and its exclusionary conduct offers the market no procompetitive benefit.

21.     The iPhone is a unique product that itself generates a separate and unique market for software applications that can be used only on iPhones. Due to the initial high

cost of the iPhone, once consumers have purchased an iPhone they are captive customers of the iPhone system and of its exclusive applications. There is both a monetary and an opportunity cost should one wish to switch from the iPhone to another cell phone. The market for iPhone applications therefore is an economically distinct product market, and the applications that are distributed within that market have no acceptable substitutes.

22.     The geographic scope of the iPhone applications market is national.

23.     The relevant market for iPhone applications includes the market for distributing software applications that can be downloaded on the iPhone to manage iPhone functions and to extend its capabilities. The relevant iPhones applications market was created on or about June 11, 2007 when Apple announced at its Worldwide Developers Conference that the iPhone would support third-party applications using the Safari engine.

## ANTITRUST INJURY

24.     It is precisely through the exclusion of competitors and other rivals from effective competition in the relevant iPhone applications market that Apple has been able to maintain its monopoly power, resulting in higher prices and slowed innovation. The iPhone applications market lacks any indicia of competitiveness. Contrary to the complementary market for software applications available for personal computers which shows genuine competition because computer hardware manufacturers – including Apple itself – do not control or have a financial stake in every sale of software that is downloaded on the computers they make, Apple through its exclusionary iPhone operating system and by reason of its exclusive App Store marketing has unlawfully

dominated the nationwide (and, indeed, worldwide) distribution market for iPhone applications.  As a result, the iPhone applications market has been harmed generally by Apple's anticompetitive conduct, which is the type of harm that the antitrust laws were enacted to remedy.

## VIOLATIONS ALLEGED
### *First Claim for Relief*
### *Violation of Sherman Act § 2: Unlawful Monopolization*

25.     Plaintiff re-alleges and incorporates paragraphs 1 through 24 by reference.

26.     Apple's conduct constitutes the intentional and unlawful maintenance of monopoly power in the relevant product market for iPhone applications in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

27.     For the purpose of maintaining its monopoly power, Apple committed numerous acts, including:

(a)     Designing the iPhone iOS as a closed system, installing security measures and program locks to prevent third party application downloads, establishing the App Store as the exclusive worldwide distributor of iPhone apps, and enforcing the App Store's exclusive distributor status by terminating developers who sold applications in competition with Apple and voiding the warranties of iPhone consumers who bought competing applications;

(b)     Willfully acquiring and maintaining a monopoly in the relevant iPhone applications market; and

(c)     Since June 2007 willfully positioning itself as the only distributor of iPhone applications.

28.     Apple has excluded competition from the relevant market and has deprived consumers of the benefits of competition among developers and sellers of applications.

29.     Apple does not have a legitimate business purpose for any of its anticompetitive conduct. Any claimed pro-competitive benefit is pretextual in light of the obvious competitive circumstances and associated marketplace conduct inconsistent with any such benefit. Apple's conduct does not result in any greater ability to reduce costs in producing or innovating the iPhone applications it sells to customers that could result in reduced prices, higher quality, or greater availability to customers. Neither does Apple's conduct reduce barriers to other vendors' entry, or otherwise result in greater competition in the market for iPhone applications. The only "benefit" that flows from Apple's conduct is a reduction in competition, and that benefit inures only to Apple's advantage, not to that of customers or competition on the merits.

30.     Apple's unlawful monopolization has injured competition in the market for iPhone applications, suppressed sales of competitors' products and increased the operating costs of other competitors.

31.     Apple's overall course of conduct has and will continue to maintain supra-competitive prices to its iPhone customers for iPhone applications and will harm innovation associated with potential products that could be offered in the iPhone app market.  It will also rob customers of their ability to make an unfettered choice of technology on the merits.

32.     Plaintiff and members of the class have been injured by Apple's anticompetitive conduct because they paid more for their iPhone applications than they

would have paid in a normal and competitive market but for Apple's 30% fee and because their freedom of choice for less costly alternatives has been eliminated.  Plaintiff and members of the class have suffered economic injury to their property as a direct and proximate result of Apple's unlawful monopolization in amounts to be proved at trial.

### *Second Claim for Relief*

### *Violation of Sherman Act § 2: Attempted Monopolization*

33.     Plaintiff re-alleges and incorporates paragraphs 1 through 24 by reference.

34.     Apple acted with a specific intent to monopolize and to destroy competition in the market for iPhone applications. Apple devised and implemented a plan to systematically eliminate competition in the market for iPhone applications.

35.      Apple willfully engaged in a course of exclusionary conduct to obtain a monopoly in the relevant product market, including:

(a)     Designing the iPhone iOS as a closed system, installing security measures and program locks to prevent third party application downloads, establishing the App Store as the exclusive worldwide distributor of iPhone apps, and enforcing the App Store's exclusive distributor status by terminating developers who sold applications in competition with Apple and voiding the warranties of iPhone consumers who bought competing applications;

(b)     Willfully acquiring and maintaining a monopoly in the relevant iPhone applications market; and

(c)     Since June 2007 willfully positioning itself as the only distributor of iPhone applications.

36.     Apple has excluded competition from the relevant market and has deprived consumers of the benefits of competition among developers and sellers of applications.

37.     Apple does not have a legitimate business purpose for any of its anticompetitive conduct. Any claimed pro-competitive benefit is pretextual in light of the obvious competitive circumstances and associated marketplace conduct inconsistent with any such benefit. Apple's conduct does not result in any greater ability to reduce costs in producing or innovating the iPhone applications it sells to customers that could result in reduced prices, higher quality, or greater availability to customers. Neither does Apple's conduct reduce barriers to other vendors' entry, or otherwise result in greater competition in the market for iPhone applications. The only "benefit" that flows from Apple's conduct is a reduction in competition, and that benefit inures only to Apple's advantage, not to that of customers or competition on the merits.

38.     Throughout the time Apple engaged in its exclusionary conduct, it had a dangerous probability of succeeding in gaining a monopoly in and controlling the relevant product market and excluding its competitors.

39.     Apple's unlawful attempts to destroy competition in the relevant product market have injured competition, suppressed sales of competitors' products, diminished competitors' future sales opportunities, and increased the operating costs of other competitors.

40.     Apple's overall course of conduct has and will continue to maintain supra-competitive prices to its iPhone customers for iPhone applications and will harm innovation associated with potential products that could be offered in the iPhone

**14**
**CLASS ACTION COMPLAINT**

applications market, and will otherwise rob customers of their ability to make an unfettered choice of technology on the merits.

41.     Plaintiff and members of the class have been injured by Apple's anticompetitive conduct because they paid more for their iPhone applications than they would have paid in a normal and competitive market but for Apple's 30% fee and because their freedom of choice for less costly alternatives has been eliminated.  Plaintiff and members of the class have suffered economic injury to their property as a direct and proximate result of Apple's unlawful attempted monopolization in amounts to be proved at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

A.     That the Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.     That the Court adjudge and decree that the unlawful conduct alleged herein constitutes a monopoly in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 and Sections 4 and 26 of the Clayton Act;

C.     That the Court adjudge and decree that the unlawful conduct alleged herein constitutes an attempt to monopolize trade and commerce in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and Sections 4 and 26 of the Clayton Act;

D.     That judgment be entered against Defendant and in favor of Plaintiff and the Class he represents for damages as allowed by the Sherman Act and Clayton Act, as

may be determined to have been sustained by them, together with costs of suit, including

reasonable attorneys' fees;

E.     That Defendant, any co-conspirators, successors, transferees, assigns,

parents, subsidiaries, affiliates, and the officers, directors, partners, agents and

employees thereof, and all other persons acting or claiming to act on behalf of

Defendant, or in concert with them, be permanently enjoined and restrained from, in any

manner, directly or indirectly, continuing, maintaining or renewing or adopting or

following any practice, plan, program or design having a similar purpose or effect in

monopolizing and restraining competition;

F.     That the Court award Plaintiff and the Class he represents their attorneys'

fees and costs, and pre-judgment and post-judgment interest as permitted by law; and

G.     That the Court award Plaintiff and the Class he represents such other and

further relief as may be necessary and appropriate.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so

triable.

Dated: May 22, 2019

By:     /s/ Joseph Alioto_____
        Joseph M. Alioto SBN 42680
        Theresa D. Moore, SBN 99978
        Jamie L. Miller, SBN 271452
        ALIOTO LAW FIRM
        One Sansome Street, 35th Floor
        San Francisco, California 94104
        Telephone:  (415) 434-8900

Jeffery K. Perkins (CSBN 57996)
LAW OFFICE OF JEFFERY K. PERKINS
1550-G Tiburon Boulevard, #344
Tiburon, California 94920
Telephone:  (415) 302-1115
Email:  jefferykperkins@aol.com

Lawrence G. Papale SBN 67068
LAW OFFICES OF LAWRENCE G. PAPALE
1308 Main Street #117
St. Helena, California 94574
Telephone: (707) 963-1704
E-mail: lgpapale@papalelaw.com

Attorneys for Plaintiff Edward Lawrence